**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**GEMCAP SOLUTIONS, LLC,**

   *Plaintiff,*

**v.**                                                                 Case No.  **SA-25-CV-01881-JKP**

**STEVEN G. LUTTMAN, H. MULLI-**
**GAN BESPOKE LIBATIONS CO,**
**MARIO MAZZA, ROBERT MAZZA,**
**INC.,**

   *Defendants.*

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Mario Mazza and Robert Mazza Inc.'s (collectively "the Mazza parties") Motion to Dismiss for Lack of Jurisdiction. *ECF Nos. 20,28*. Plaintiff GemCap Solutions (GemCap) responded. *ECF Nos. 22.* Upon consideration, the Motion is **GRANTED**. The causes of action asserted against Mario Mazza and Robert Mazza Inc. are dismissed without prejudice. The Clerk of Court is **DIRECTED** to terminate these Defendants from this action.

### Factual Background

On December 29, 2022, Defendant H. Mulligan Bespoke Libations Co. (Bespoke Libations), as borrower, executed a Loan and Security Agreement (Loan Agreement) with GemCap, establishing a revolving loan credit secured by a first priority lien on assets including inventory, accounts, equipment, and general intangibles. The Loan and Security Agreement Schedule required Bespoke Libations to provide to GemCap regular Borrowing Base Certificates ("BBCs")

and maintain accurate reporting of inventory and accounts receivable. Pursuant to the Loan Agreement, GemCap held "cash control," which requires that all of Bespoke Libation's collections be directed to GemCap's account. Under the Loan Documents, only inventory located at Bespoke Libations's premises or another location expressly approved in writing by GemCap constitutes eligible inventory. Bespoke Libations is required to inform GemCap within two business days of any event or circumstance that would cause inventory to become ineligible inventory.

Steven Luttman was guarantor to the Loan Agreement. Mario Mazza is a member of Bespoke Libations's Board of Directors. As a member of the Board of Directors, Mario Mazza signed a written consent approving the loan transaction.

On October 16, 2025, GemCap conducted a site-visit inventory audit at Robert Mazza, Inc., a facility owned and operated by Mario Mazza, which resulted in the discovery that inventory had been sold or disposed of without GemCap receiving any proceeds from the sales. During this same site visit, GemCap discovered an undisclosed transfer of 3,000 bottles of finished goods inventory, which the Mazza parties controlled and relocated without GemCap's consent.

GemCap filed this action in Texas state court. GemCap asserts causes of action arising out of the alleged breach of the Loan Agreement between GemCap and Bespoke Libations and the personal guarantor Steven G. Luttman for: breach of contract against Bespoke Libations and Luttman; fraud by nondisclosure against Bespoke Libations; conversion against Bespoke Libations and the Mazza parties; tortious interference against the Mazza parties; unjust enrichment against Bespoke Libations and the Mazza parties, and; money had and received against Bespoke Libations and the Mazza parties. *ECF No. 1, 16.* The Mazza parties removed the action to this

federal court based upon diversity jurisdiction and now file this Motion to Dismiss them from this action based upon lack of personal jurisdiction over each party. *ECF No. 1, 20.*

**Legal Standard**

When a nonresident defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and the court does not hold an evidentiary hearing, the plaintiff bears the burden of presenting a prima facie case that the Court holds personal jurisdiction over the challenging defendants. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985); *Allscape Clearing & Maint., Inc. v. Ranken Energy Corp.*, No. 6:13-CV-00027, 2013 WL 5352705, at *2–3 (S.D. Tex. Sept. 23, 2013). In making this determination, the court must accept as true all uncontroverted allegations in the Complaint and must resolve all factual disputes in favor of the plaintiff. *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 869 (5th Cir. 2000). However, the Court need not accept any conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power,* 253 F.3d 865, 868 (5th Cir. 2001). Once the plaintiff makes a prima facie showing of personal jurisdiction over each defendant challenging jurisdiction, the burden shifts to these defendants to demonstrate that exercising personal jurisdiction would be so unfair and unreasonable as to violate due process. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

Federal courts sitting in diversity must first determine whether the forum state's long arm statute permits exercise of jurisdiction, and if so, then determine whether such exercise comports with due process. *Delgado v. Reef Resort Ltd.,* 364 F.3d 642, 644 (5th Cir. 2004); *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999). Because the Texas long-arm statute confers jurisdiction to the limits of due process, the plaintiff's prima facie burden is to show the nonresident defendant purposefully established minimum contacts with Texas such that the exercise of juris-

diction does not offend traditional notions of fair play and substantial justice. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To do so, a defendant's "minimum contacts" with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985); *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg,* 754 F.2d 542, 545 (5th Cir. 1985); *Willis v. Vericel Corp.*, No. SA-23-CV-00044, 2023 WL 2993027, at *3 (W.D. Tex. Apr. 14, 2023). There are two theories under which a court analyzes a defendant's minimum contacts with the forum state: general and specific jurisdiction. *Lewis v. Fresne,* 252 F.3d 352, 358 (5th Cir. 2001). Analysis under general jurisdiction focuses only on whether there are continuous and systematic contacts between the defendant and the forum, regardless of the cause of action. General jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-19 (1984). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). To confer general jurisdiction, a defendant must have a business presence in the forum state. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

Analysis of specific jurisdiction focuses on the cause of action, the defendant, and the forum. "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). Courts conduct a three-step analysis to evaluate the existence of specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it

4

purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; and (2) whether the plaintiff's cause of action arises out of or results from defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The purposeful requirement "prevents jurisdiction from arising from mere 'random, fortuitous, or attenuated contacts, or from the unilateral activity of another party or a third person.'" *Special Indus. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 328 (5th Cir. 2014) (quoting *Burger King*, 471 U.S. at 475). If a plaintiff establishes the first two elements of this test, the burden then shifts to the defendant to show that exercising jurisdiction would be unreasonable, meaning it would offend traditional notions of fair play and substantial justice. *McFadin*, 587 F.3d at 759; *see also Luv N'care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 473 (5th Cir. 2006).

### Discussion

Due to nonresident Defendants Mario Mazza and Robert Mazza, Inc.'s challenges to personal jurisdiction under Federal Rule 12(b)(2), GemCap bears the burden of presenting a prima facie showing that this Court holds personal jurisdiction over each of these defendants. *See Stuart,* 772 F.2d at 1192. In response to the personal-jurisdiction challenge, GemCap contends this Court has specific personal jurisdiction over Mario Mazza and Robert Mazza, Inc., collectively, because Mario Mazza personally approved the Loan Agreement as Director of Bespoke Libations and his actions through his company, Robert Mazza, Inc., directly affected and caused harm to GemCap, which is based in Texas. Second, GemCap contends the fiduciary-shield doctrine does not protect Mario Mazza and Robert Mazza, Inc.

Although GemCap argues and presents evidence that this Court holds personal jurisdiction over the Mazza parties, collectively, this Court must analyze whether it holds personal juris-

diction over each defendant, individually, not collectively. As stated, this Court will hold specific jurisdiction over Mario Mazza or Robert Mazza, Inc. should each party's independent actions establish the necessary minimum contacts with Texas, and the causes of action asserted against each defendant arose from or is directly related to its' independent contacts with Texas. *See Mink*, 190 F.3d at 336.

### 1.  Mario Mazza

GemCap contends Mario Mazza "personally approved the Texas-governed loan transaction, personally controlled [Bespoke Libations's] invoicing and collections, personally managed and stored GemCap's collateral at his own (not [Bespoke Libations's] facility, and personally diverted receivables, sales proceeds, and inventory in violation of GemCap's Texas security interest." *ECF No. 22, pp. 7-8*. Based upon these alleged actions, GemCap contends Mario Mazza "directly affected a Texas lender's collateral and contractual rights under an agreement that [Mario Mazza] approved." Because those tortious actions, not those of Bespoke Libations, form the basis of GemCap's tort claims against Mario Mazza, GemCap contends Mario Mazza engaged in "the kind of intentional conduct directed at Texas that is sufficient to confer this Court personal jurisdiction over Mazza." GemCap contends Mario Mazza's "tortious actions were knowingly aimed at GemCap in Texas, and caused harmful effects in Texas," and therefore, he 'knew that the brunt of that injury would be felt by' GemCap in the state where it maintains its principal place of business (Texas)." *Id. at pp. 9-10*.

To support this argument, GemCap presents evidence which includes a Declaration by David Ellis, the Loan and Security Agreement, the Loan and Security Agreement Schedule, and the Written Consent to the Loan and Security Agreement executed by Bespoke Libations's board members. *ECF No. 22, exh. 1*. This evidence supports GemCap's assertions that its principal

6

place of business is in Texas, it entered a Loan Agreement with Bespoke Libations, and Mario

Mazza, as one of the three Directors of Bespoke Libations, approved the Loan Agreement. Ellis

attests that GemCap's site inventory audit revealed "over $90,000 of Borrower's inventory (at

cost) had been sold or otherwise disposed of in one month, without GemCap receiving any pro-

ceeds from the sales. *Id*. During this same site visit, GemCap was presented with a receipt jour-

nal from a European warehouse (Bemakers) dated September 15, 2024, evidencing a transfer of

3,000 bottles of Borrower's finished goods inventory.  *Id*.

### A.  Fiduciary-Shield Doctrine

GemCap argues this Court holds specific personal jurisdiction over Mario Mazza based

upon his approval of the Loan Agreement as a board member of Bespoke Libations. *ECF Nos.*

*16, 22*.

With limited exceptions, the fiduciary shield doctrine prohibits a court from exercising

personal jurisdiction over an individual based solely on jurisdiction over the company with

which the individual is associated. *Stuart,* 772 F.2d at 1197.[1] In addition, the fiduciary-shield

doctrine prevents courts from exerting personal jurisdiction over directors of a company based

solely upon their conduct in that role. *Id*. Consequently, an individual's transaction of business

within a state solely as a corporate officer does not create personal jurisdiction over that individ-

ual, although the state has personal jurisdiction over the corporation." *Id*.

The fiduciary-shield doctrine applies under these facts to shield Mario Mazza from this

Court's exercise of personal jurisdiction over him based upon his approval of the Loan Agree-

---

[1] Because the doctrine is based on "'the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer,'" some courts hold analysis is a "sub-issue" of the due process concerns espoused in *International Shoe v. Washington*. *See Saktides v. Cooper*, 742 F. Supp. 382, 385–86 (W.D. Tex. 1990)(citing *Marine Midland Bank v. Miller,* 664 F.2d 899, 902 (2d Cir. 1981)). This Court will consider the doctrine here, as it is subsumed in the parties' minimum-contacts arguments, and the Court does not reach the due-process prong of the jurisdictional analysis.

ment as a board member of Bespoke Libations. In this case, this Court's personal jurisdiction over Bespoke Libations does not convey personal jurisdiction over Mario Mazza based upon his approval of the Loan Agreement as a board member because it is undisputed that Mazza's action, as enumerated by GemCap, was performed in Mazza's capacity as a board member of Bespoke Libations. This Court may not base its jurisdiction over Mario Mazza solely on its jurisdiction over Bespoke Libations or his action on its behalf. *Stuart,* 772 F.2d at 1198; *Admiral Ins. Co., Inc. v. Briggs*, No. CIV.A. 302CV0310P, 2002 WL 1461911, at *5 (N.D. Tex. July 2, 2002).

As an exception, this shield may be pierced if the individual and the company are alter egos. *See Stuart,* 772 F.2d at 1198; *see also Fairchild v. Barot*, 946 F. Supp. 2d 573, 578 (N.D. Tex. 2013). However, GemCap does not plead or contend Bespoke Libations is an alter ego of Mario Mazza.

### B.  Minimum contacts

This Court will hold specific personal jurisdiction over Mario Mazza if he committed at least one act in Texas and if that act is substantially related to this suit. *See Moncrief Oil Int'l,* 481 F.3d at 311. To satisfy this prima facie burden, GemCap alleges Mario Mazza's action of facilitating the unapproved removal of Bespoke Libation's inventory from his business's warehouse establish the necessary minimum contacts with Texas, and the asserted causes of action arose from or are directly related to these attested actions. *See Mink*, 190 F.3d at 336.

Construing GemCap's argument liberally, to the extent it argues Mario Mazza's execution of the Loan Agreement constitutes contracting with a resident of Texas and creates personal jurisdiction, this argument fails. Merely contracting with a resident of Texas is not enough to establish minimum contacts. *Moncrief Oil Int'l,* 481 F.3d at 312; *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Final Expense Direct v. Python Leads, LLC*, 689 F.Supp.3d 430, 437

(S.D. Tex. 2023). Mario Mazza was not a party to the Loan Agreement contract, and therefore, is not subject to its terms, nor is Mazza subject to any personal liability for Bespoke Libations' alleged breach. *See id.*; *See also Stuart,* 772 F.2d at 1197-98.

It appears GemCap contends Mario Mazza's direction of moving or selling Bespoke Libations' inventory and collecting receivables on behalf of Bespoke Libations was in violation of the Loan Agreement and were "tortious acts committed outside the state that are felt inside the state [that] can be sufficient to establish minimum contacts." *ECF No. 22, pp. 9-10.* This argument, and the evidence presented to support it, also fail to establish the minimum contacts necessary to establish specific personal jurisdiction over Mario Mazza. The Loan Agreement established Bespoke Libations would engage in specific conduct and would satisfy the established repayment terms with GemCap, which was located in Texas. Mario Mazza could not reasonably anticipate being summoned into court in Texas based upon Bespoke Libation's violation of the terms of the Loan Agreement, even if conducted at Mazza's direction. *Burger King,* 471 U.S. at 475; *D.J. Investments,* 754 F.2d at 545. Even as this conduct supports the tort causes of action asserted against Mario Mazza, "mere allegations of tortious interference with a forum resident's contractual rights are not sufficient to establish specific personal jurisdiction." *Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*, 642 F. Supp. 3d 560, 566 (E.D. Tex. 2022) (internal quotations omitted) (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001)).

Pertinent to GemCap's general argument, with regard to the first prong of the personal-jurisdiction test, a plaintiff cannot establish a defendant's minimum contact with the forum state based solely as a result of attenuated contacts or its own unilateral activity. *Burger King*, 471 U.S. at 475. That is, "the plaintiff cannot be the only link between the defendant and the forum.

9

Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193–94 (5th Cir. 2019); *McFadin*, 587 F.3d at 760. Specific personal jurisdiction cannot be based on the fortuity that the plaintiff, who is one party to a contract resides in the forum state and performs the contract from the forum state. *Id*.

Thus, GemCap cannot satisfy its prima facie burden to show Mario Mazza held sufficient minimum contacts with Texas based solely upon the attenuated contact that his alleged actions affected GemCap in Texas. *See Burger King*, 471 U.S. at 475. Instead, GemCap must make a prima facie showing that the causes of action arose out of or result from Mario Mazza's alleged forum-related contact. *See Mink,* 190 F.3d at 336; *McFadin*, 587 F.3d at 759. This showing is not possible under these facts.

Because GemCap cannot satisfy its prima facie burden of proof, the Court will not engage in analysis whether exercise of jurisdiction would offend the traditional notions of fair play and substantial justice.

**Robert Mazza, Inc.**

For the same reasons this Court does not hold specific personal jurisdiction over Mario Mazza, it does not hold specific personal jurisdiction over Robert Mazza, Inc.

Although the evidence presented does show Robert Mazza, Inc. does have some minimal contacts with Texas through its sales to Texas distributors and companies, this business does not subject Robert Mazza, Inc. to personal jurisdiction in Texas because this business is not connected to the present litigation. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty*, 582 U.S. 255, 264 (2017). GemCap does not allege any injuries resulting from

Robert Mazza, Inc.'s sales to Texas distributors. Thus, GemCap fails to satisfy its burden to show the instant action is connected to Robert Mazza, Inc.'s contacts in Texas.

Because GemCap fails to establish any connection between Robert Mazza, Inc.'s contacts with the state of Texas and the asserted causes of action, this Court cannot exercise specific personal jurisdiction over Robert Mazza, Inc.

## Conclusion

For the reasons stated, the Court **GRANTS** Defendants Mario Mazza and Robert Mazza, Inc.'s Motion to Dismiss for Lack of Jurisdiction. *ECF No. 20*. The causes of action asserted against these Defendants are dismissed without prejudice. The Clerk of Court is **DIRECTED** to terminate these Defendants.

It is so ORDERED.
SIGNED this 28th day of April, 2026.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE